UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
ASHLAND

| | | |
|---|---|---|
| ESTELLE DEAN SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 15-25-GFVT |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION** |
| CAROLYN W. COLVIN, | ) | **&** |
| COMMISSIONER OF SOCIAL SECURITY, | ) | **ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\*

Plaintiff Estelle Dean Smith seeks judicial review of an administrative decision of the Commissioner of Social Security, which denied Smith's claim for supplemental security income benefits as well as disability insurance benefits. Smith brings this action pursuant to 42 U.S.C. § 405(g), alleging various errors on the part of the ALJ considering the matter. The Court, having reviewed the record and for the reasons set forth herein, will DENY Ms. Smith's Motion for Summary Judgment [R. 11] but will GRANT the Commissioner's [R. 12.]

**I**

**A**

Plaintiff Estelle Dean Smith filed an application for Title II disability insurance benefits and Title XVI supplemental social security in November 2011, alleging disability beginning on September 19, 2009. [Transcript (hereinafter, "Tr.") 11.] Smith's motion for summary judgment explains that Smith suffers from, among other things, lower back and hip pain, stress, anxiety, depression, and a history of Guillain-Barre Syndrome. [*See* R. 11-1 at 2-7.] Smith's claims for Title II and Title XVI benefits were denied initially and upon reconsideration. [Tr. 11.]

Subsequently, a hearing was conducted upon Smith's request. [*See* Tr. 31-62.] Following the hearing, ALJ Michele M. Kelley issued a final decision denying both of Smith's claims. [Tr. 11-23.]

To evaluate a claim of disability for both Title II disability insurance benefit claims and Title XVI supplemental security income claims, an ALJ conducts a five-step analysis. *Compare* 20 C.F.R. § 404.1520 (disability insurance benefit claims) *with* 20 C.F.R. § 416.920 (supplemental security income claims).[1] First, if a claimant is performing a substantial gainful activity, she is not disabled. 20 C.F.R. § 404.1520(b). Second, if a claimant does not have any impairment or combination of impairments which significantly limit her physical or mental ability to do basic work activities, she does not have a severe impairment and is not "disabled" as defined by the regulations. 20 C.F.R. § 404.1520(c). Third, if a claimant's impairments meet or equal one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, she is "disabled." 20 C.F.R. § 404.1520(d). Before moving to the fourth step, the ALJ must use all of the relevant evidence in the record to determine the claimant's residual functional capacity ("RFC"), which assesses an individual's ability to perform certain physical and mental work activities on a sustained basis despite any impairment experienced by the individual. *See* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545.

Fourth, the ALJ must determine whether the clamant has the RFC to perform the requirements of her past relevant work, and if a claimant's impairments do not prevent her from doing past relevant work, she is not "disabled." 20 C.F.R. § 404.1520(e). Fifth, if a claimant's

---

[1] For purposes of a disability insurance benefits claim, a claimant must show that her impairments were disabling prior to the date on which her insured status expired. 20 C.F.R. § 404.131. Beyond this requirement, the regulations an ALJ must follow when analyzing Title II and Title XVI claims are essentially identical. Hereinafter, the Court provides primarily the citations to Part 404 of the relevant regulations, which pertain to disability insurance benefits. Parallel regulations for supplemental security income determinations may be found in Subpart I of Part 416.

impairments (considering her RFC, age, education, and past work) prevent her from doing other work that exists in the national economy, then she is "disabled." 20 C.F.R. § 404.1520(f).

Through step four of the analysis, "the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003). At step five, the burden shifts to the Commissioner to identify a significant number of jobs that accommodate the claimant's profile, but the claimant retains the ultimate burden of proving her lack of residual functional capacity. *Id.*; *Jordon v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008).

At the outset of this case, the ALJ determined that Ms. Smith meets the insured status requirements of the Social Security Act through June 30, 2010. [Tr. 13]; *see also* 20 C.F.R. § 404.131. Then at step one, the ALJ found Smith had not engaged in substantial gainful activity since her alleged disability onset date. [Tr. 13.] At step two, the ALJ found Smith to suffer from the severe impairments of degenerative disc disease, obesity, anxiety, and depression. [*Id.*] At step three, the ALJ determined Smith's combination of impairments did not meet or medically equal one of the listed impairments in 20 C.F.R. Part 404 or Part 416. [Tr. 15.] Before moving on to step four, the ALJ considered the entire record and determined Smith possessed the residual functional capacity to perform less than a full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with certain limitations described as follows:

> The claimant can lift and carry, push and pull 10 pounds frequently and 20 pounds occasionally. The claimant can stand and walk six hours in an eight-hour workday and sit six hours in an eight-hour workday. The claimant can frequently push and pull with the upper and the lower extremities. The claimant can frequently climb ramps or stairs, balance, stoop, and kneel. The claimant can only occasionally climb ladders, ropes, or scaffolds, crouch, and crawl. The claimant should avoid concentrated exposure to vibration. The claimant can understand, remember, and carry out unskilled tasks up to SVP two. The claimant

> can sustain attention, concentration, and pace for unskilled task completing with regular tolerances at two-hour blocks of time. The claimant can have only occasional interaction with the public. The claimant can adapt to work demands and occasional changes given reasonable support.

[Tr. 17.] After explaining in detail how she determined Smith's RFC [Tr. 17-21], the ALJ found at step four that, based on this RFC, Smith is capable of performing various jobs that exist in significant numbers in the national economy.[2] Accordingly, the ALJ concluded Smith was not disabled under 20 C.F.R. §§ 404.1520(g) or 416.920(g). [Tr. 23.] The Appeals Council declined to review the ALJ's decision [Tr. 1-3], and Smith now seeks judicial review in this Court.

**B**

The Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. 42 U.S.C. § 405(g); *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Shelman v. Heckler*, 821 F.2d 316, 319-20 (6th Cir. 1987). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). The substantial evidence standard "presupposes that there is a zone of choice within which [administrative] decision makers can go either way, without interference by the courts." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (quoting *Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

To determine whether substantial evidence exists, courts must examine the record as a whole. *Cutlip*, 25 F.3d at 286 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, a reviewing court may not

---

[2] The ALJ had no need to consider Ms. Smith's past relevant work or transferability of job skills, as the claimant's past work as a self-employed house cleaner did not meet the earnings level of past substantial gainful activity. [*See* Tr. 21]; 20 C.F.R. §§ 404.1565 and 416.965.

4

conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 713 (6th Cir. 2012); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988).  Rather, if the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion.  *See Ulman*, 693 F.3d at 714; *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## II

### A

The first key issue presented to the Court in Ms. Smith's Motion for Summary Judgment is whether the ALJ inappropriately failed to assign great weight to consultative examiner Dr. Andrew Jones, Jr.'s opinions.  [*See* R. 11-1; Tr. 520-26.]  Smith argues the ALJ "cherry picked" Dr. Jones's psychological assessment and erred in relying more heavily on non-examiner Dr. May Thompson.  [R. 11-1 at 8-9.]  However, neither reversal nor remand is warranted here as a result of the ALJ's treatment of Dr. Jones's opinion.

Ordinarily, an ALJ should assign greater weight to treating sources than to non-treating ones.  20 C.F.R. § 404.1527(c)(2).  In this case, there is no evidence from any treating sources in the record.  Instead, the ALJ considered opinion evidence from state agency consultants Dr. Quiroga, Dr. Thompson, and Dr. Caldwell, as well as evidence from consultative examiners Dr. Jones and Dr. Whiteside.  [Tr. 20-21.]  Ms. Smith maintains the ALJ should have considered evidence from Dr. Jones, an examining source, to be more weighty than evidence from various other non-examiners.

Indeed, the Plaintiff more or less asserts that the ALJ's failure to assign greater weight to non-examiner Dr. Thompson than to Dr. Jones, who actually examined Smith, is a *per se* violation of federal regulations. However, Ms. Smith's argument is too narrow an interpretation of the applicable rule. 20 C.F.R. § 404.1527(c)(1) does provide that, in general, more weight is assigned to an examining source than to the opinion of a non-examiner. Notwithstanding this default rule, the regulation goes on to set forth additional criteria relevant to the ALJ's evaluation of opinion evidence.

For example, § 404.1527(c)(3) states: "The more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion. The better an explanation a source provides for an opinion, the more weight we will give that opinion." Section (c)(4) of the regulation makes clear that greater weight is assigned to opinions that are "more consistent . . . with the record as a whole." And an ALJ may also consider factors such as an opinion source's amount of understanding of disability programs and their evidentiary requirements, and the extent to which the source is familiar with additional information in a claimant's case record. 20 C.F.R. § 404.1527(c)(6). While assigning greater weight to an examining source is the default rule, an ALJ may clearly employ other considerations when determining how much weight to assign a particular source's opinion.

In this case, the ALJ did not assign greater weight to examiner Dr. Jones than to non-examiner Dr. Thompson, as contemplated by 20 C.F.R. § 404.1527(c)(1). The ALJ noted that the majority of Dr. Jones's opinions were consistent with those of the state agency consultants. [Tr. 20.] However, the ALJ determined a portion of Dr. Jones's opinion should be afforded little weight, notwithstanding the fact he was an examining source:

> However, his finding that Ms. Smith did not possess the mental skills and coping mechanisms to adapt or respond in a work setting is given no weight, as Dr.

6

> Jones' evaluation does not support such restriction.  Clinical testing found the claimant had average cognitive functioning, average short-term memory, and only slight difficulty in concentration (Exhibit 5F, pg. 3).  Additionally, Ms. Smith reported that she is able to provide all of the primary care for her children; read, sew, and do puzzles; use the computer; and manage her family's food stamps. (Id, pg. 5).  The undersigned finds consultative examiner Jones appeared to have based his finding on the subjective complaints of the claimant rather than any objective or clinical finding.  Further, the undersigned also notes that Ms. Smith's scores on the Rey Fifteen Item Memory Test were indicative of symptom amplification and embellishment (Id, pg. 6).

[Tr. 21.]

This excerpt from the ALJ's decision demonstrates that the ALJ appropriately weighed the sources' opinions in light of the additional guidance set forth in the regulation.  For example, the ALJ appears to have employed 20 C.F.R. § 404.1527(c)(3), (4), and (6) when evaluating Dr. Thompson's opinion.  First, the ALJ explained that great weight was given to Dr. Thompson's opinion because "her limitations are internally consistent with the record as a whole and well supported by a reasonable explanation and the evidence."  [Tr. 20.]  Further, the ALJ found that while Dr. Thompson was not a treating or examining source, her opinion "is based upon a thorough review of the available medical record and a comprehensive understanding of agency rules and regulations."  [*Id.*]  Likewise, the ALJ chose to discount portions of Dr. Jones's opinion, as his evaluation was deemed inconsistent with his proposed restrictions and because he "appeared to have based his finding on the subjective complaints of the claimant rather than any objective or clinical finding."  [Tr. 21; *see also supra* at 5.]

"In appropriate circumstances, opinions from State agency medical . . . consultants . . . may be entitled to greater weight than the opinions of treating or examining sources."  *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 409 (6th Cir. 2009) (quoting Soc. Sec. Rul. 96-6p).  For the aforementioned reasons, the Court deems the present case an appropriate departure from the general rule and does not find the ALJ assigned improper weight to Dr. Jones's opinion.

7

**B**

To the extent Plaintiff Smith also takes issue with the ALJ's treatment of consultative examiner Dr. Whiteside's opinion, the Court again finds the ALJ appropriately weighed the medical evidence. Like with Dr. Jones's opinion, the ALJ credited portions of Whiteside's opinion that were supported "by the objective evidence and other opinions of record" but discounted other portions. Specifically, the ALJ gave little to no weight to Dr. Whiteside's suggestion that Ms. Smith must change positions every thirty minutes. [Tr. 21.] The ALJ cited various exhibits as grounds for discounting that finding, which demonstrate "no clinical evidence of neurological deficits and only mild degenerative changes in diagnostic testing of the cervical and lumbar spines." [*Id.*] The Plaintiff attempts to set forth over one page of evidence in apparent contradiction to this statement by the ALJ. [*See* R. 11-1 at 9-10.] However, the Plaintiff does not provide specific citations to the administrative record to support her claims,[3] and even if contradictory evidence does exist in the record, Ms. Smith is not entitled to summary judgment in light of this Court's standard of review.

In this case, the Court's review is limited to whether there is substantial evidence in the record to support the ALJ's decision. The substantial evidence standard is deferential as it "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986). If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court would decide the matter differently and even if substantial evidence also supports the

---

[3] The Court's Standing Scheduling Order which applies to all Social Security actions instructs the parties to "provide the Court with specific page citations to the administrative record to support their arguments. The Court will not undertake an open-ended review of the entirety of the administrative record to find support for the parties' arguments. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006). Failure to provide specific citations to the record may constitute grounds for denial of the motion." [R. 10 at 3-4.]

opposite conclusion. *Her*, 203 F.3d at 389-90. Ms. Smith's medical history may indeed support a finding that she struggles with ambulation and has suffered at times from a decreased range of motion. [*See* R. 11-1 at 9-10.] However, the ALJ provided specific citations to medical records that also support the ALJ's description of Ms. Smith's condition. [Tr. 21 (citing, *e.g.*, Tr. 494-96; 503; 515-16 (repeatedly describing a "normal gait" and labeling Smith's degenerative disk disease as "mild").] In light of this, the Court does not find error in the ALJ's treatment of Dr. Whiteside's opinion.

## C

Finally, Plaintiff Smith argues the ALJ failed to accurately describe the claimant in the RFC. [R. 11-1 at 11.] The Plaintiff submits the flawed description was "a result of failing to include all the limitations and restrictions that were assessed by the government's own state agency examiners." [*Id.*] This argument is intertwined with the Plaintiff's previous allegations regarding the ALJ's treatment of Dr. Jones's and Dr. Whiteside's opinions. As explained above, the Court finds no error in the ALJ's consideration of Dr. Jones's or Dr. Whiteside's opinion, and, as a result, this argument also fails.

The ALJ's decision to give little weight to Dr. Jones's finding that Ms. Smith did not possess the requisite mental skills and coping mechanisms was supported by substantial evidence, which the ALJ outlined in the decision. [*See* Tr. 21 (citing, *e.g.*, Tr. 520; 524-25).] Likewise, the ALJ's decision to disregard Dr. Whiteside's finding that Ms. Smith must change positions every thirty minutes was supported by substantial evidence. [*Id.* (citing, *e.g.*, Tr. 494-96; 503; 515-16).] As the Commissioner astutely pointed out, "the real question before this Court is whether the ALJ's residual functional capacity finding was reasonable." [R. 12 at 12.]

9

An ALJ must assess a claimant's RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). The ALJ considers a claimant's severe impairments as well as the limiting effects of all impairments, "even those that are not severe," including a claimant's pain. 20 C.F.R. § 404.1545(e). While the Plaintiff argues the ALJ failed to consider Ms. Smith's "continual difficulties sitting, standing, and walking" [R. 11-1 at 11], the ALJ's opinions set forth in the RFC remain supported by substantial evidence. The ALJ included various limitations on Smith's capacity, including standing, walking, or sitting only six, rather than eight, hours out of the workday, and sustaining attention and concentration for two-hour blocks of time. [Tr. 17.] While some evidence may support more stringent limitations on Ms. Smith's working abilities, the record suggests that the ALJ's RFC determination was appropriate. Thus, the vocational expert's testimony was not improper and may serve as substantial evidence for the ALJ's ultimate decision. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 239-41 (6th Cir. 2002).

## III

In conclusion, the ALJ did not err in weighing the opinion evidence provided by Dr. Jones and Dr. Whiteside, and the RFC was supported by substantial evidence. Even if some evidence supports the Plaintiff's position, under a substantial evidence standard of review, the Court leaves the ALJ's decision undisturbed. Therefore, and the Court being otherwise sufficiently advised, it is hereby **ORDERED** as follows:

1. Plaintiff Estelle Dean Smith's Motion for Summary Judgment [R. 11] is **DENIED**;

2. The Commissioner's Motion for Summary Judgment [R. 12] is **GRANTED**; and

3. Judgment in favor of the Defendant will be entered contemporaneously herewith.

This the 8th day of July, 2016.

Gregory F. Van Tatenhove
United States District Judge

11